[Civ. No. 15000.   First Dist., Div. Two.   Mar. 26, 1952.]

Estate of SARAH WILLIAMS, Deceased.   MARGUERITE BLAND, Appellant, v. JOHN POTTER, Respondent.

K. R. McDougall and Aubrey B. Fairfax for Appellant.

Crist, Stafford & Peters and John M. Donegan for Respondent.

GOODELL, J.—Sarah Williams died on June 24, 1948, and respondent, her nephew, filed for probate a will dated August 14, 1944, which named him as executor and left him half, and his sister half, of the estate.

A few days later appellant filed for probate a will dated May 11, 1948, which revoked earlier wills, named appellant as executrix, and named Rena Suddeth, a friend, as sole legatee and devisee. Paragraph "Fifth" thereof reads: "I intentionally make no provision for my relative John L. Potter or for any other person not mentioned herein, and if any person not provided for herein shall succeeed in proving . . . that he or she is entitled to share in my estate, I give to such person the sum of one dollar . . ."

Respondent filed a contest of the 1948 will on the grounds of unsoundness of mind, undue influence, and fraud. The jury returned three special verdicts, (1) that the decedent was of sound mind, (2) that the will had been made under the undue influence of Rena Suddeth, and (3) that there was no fraud. The judgment denied the will admission to probate.

The proponent appealed and division one of this court reversed the judgment (99 Cal.App.2d 302 [221 P.2d 714]) holding that there was "not sufficient evidence to sustain a finding of suspicion that Rena exerted undue influence, far less to sustain a reasonable inference that such influence was exerted."

On November 2, 1950, the remittitur was filed in the clerk's office of Santa Clara county.

Appellant, who was the prevailing party, thereupon filed with the county clerk a cost bill on appeal ($438.92) and a cost bill on the trial ($46.50).

Respondent, who was the losing party, filed a cost bill on appeal ($184.60) and a cost bill on the trial ($169).

The superior court taxed all four cost bills ($839.02) against the estate, and appellant moved to retax costs so as to free the estate from them, which motion was denied.

In its order the court said: "I believe this is a proper case to assess all costs against the estate under the discretion given me by Section 1232 of the Probate Code." This appeal is from that order, appellant's contention being that such discretion was abused.

### 1. *Respondent's Costs on Appeal*

■ The remittitur ordered "that the judgment of the Superior Court . . . is hereby reversed. Prevailing party to recover costs on appeal." Such order was authorized by section 1232 Probate Code as amended in 1945 and by rules 26(a) and (b) of the Rules on Appeal adopted by the Judicial Council in 1943 which have the force of law.

In *Estate of Powers,* 97 Cal.App.2d 888, 892 [218 P.2d 1007], the court said:

"The appellate court is now the only court that has power to award appeal costs to either a successful or unsuccessful contestant. Once an appeal has been determined, and where, as here, the appellate court makes no specific mention of costs, the unsuccessful contestant and litigant is not entitled to costs, the probate court has no power to award them . . ." That opinion makes it clear that *Estate of Bump,* 152 Cal. 271 [92 P. 642], relied on by respondent, is no longer authority on this question.

The final judgment awarding costs to the appellant precluded any order awarding costs to anybody else, hence the part of the order awarding $184.60 to respondent was in direct conflict with the order of the appellate court and was void. No question of discretion was involved here.

### 2. *Respondent's Costs on the Trial*

■ The superior court awarded respondent $169 trial costs. The judgment which denied probate to the 1948 will ordered "that contestant recover his costs from the estate." That original award of course fell with the reversal of the judgment of which it was a part.

■ When, after the reversal, the probate court had the decision on appeal before it as a guide in exercising its discretion (11A Cal. Jur. p. 250, *infra*) we are satisfied, for the reasons set forth at length under the next heading, that it was a clear abuse of its discretion to award trial costs to the respondent.

### 3. *Appellant's Costs on Appeal*

The appellate court adjudged that the prevailing party should recover costs on appeal but did not specify *in so many words* the party by whom they should be paid.

Section 1232, Probate Code, provides: "When not otherwise prescribed by this code or by rules adopted by the Judicial Council, either the superior court or the court on appeal, may, in its discretion, order costs to be paid by any party to the proceedings, or out of the assets of the estate, as justice may require."

Rule 26(a), *supra,* reads: ". . . In probate cases, in the absence of an express direction for costs by the reviewing court, costs on appeal shall be awarded to the prevailing party, *but the superior court shall decide against whom such award shall be made . . ."* (Italics added). See *Estate of Powers,* 97 Cal.App.2d 888, 892, *supra.*

The first and foremost guide for the probate court was the appellate court's order that the prevailing party should recover costs. That party was the estate, represented by its executrix. One entitled to recover money occupies a creditor status but obviously the executrix, who had expended $438.92 on the appeal, could not get back any part thereof out of the assets in her own hands since she could hardly be her own creditor. The order which "assessed all costs against the estate" therefore ran counter to the order of the appellate court since it resulted in the estate *paying* its own costs on appeal instead of *recovering* them. If the order stands, appellant's "recovery" is purely illusory and nothing but a paper recovery.

The real parties in interest on the will contest were Rena Suddeth, the sole beneficiary of the 1948 will (see 99 Cal.App. 2d 304) and respondent, the sole beneficiary (his sister having died) of the 1944 will, the person who would have profited by the breaking of the 1948 will. However, Rena won and respondent lost, and if these costs were to come out of this small $7,000 estate she would receive on distribution $438.92 less than she would if the estate really *recovered* its costs as the appellate court ordered. In such event she would be paying her own costs.

The probate court gave the following reasons for charging all the costs against the estate: "In the case at bar the contestant was the only surviving relative of decedent, and although only a nephew, his relationship with decedent was equal to that of mother and son. She had once conveyed to him the house. When she requested he deeded the house back to her. Decedent had previously made a will leaving the property to contestant and his sister. He contributed money to

decedent. Decedent often told friends she was going to leave the house to contestant.''

All these antecedent matters and many others (including the somewhat strained relations between aunt and nephew during the last three or four years of her life) were fully considered and discussed in the opinion on appeal. With the finality of that decision all such matters should have no bearing or significance in view of the rule that ''The final determination of the litigation . . . must have a weight in influencing the court in the exercise of the discretion to award costs with which the law has vested it, and not until the final determination can that discretion be properly exercised.'' (*Estate of Yoell*, 160 Cal. 741, 743 [117 P. 1047]; 11A Cal. Jur. p. 250.) The appellate court's opinion does not indicate any ''equities'' or ''hardship'' on respondent's side. If it had found any, that court might have made a different order respecting costs.

The probate court said further: ''Under the circumstances contestant did what everyone should have done similarly situated. It was his duty to contest the will even though he was in no need of the small amount he would receive. If he failed to contest the will it could have been construed that he was not worthy to receive his aunt's bounty . . .

''I believe this case comes under the ruling in the *Estate of Bump*. Contestant acted in the utmost good faith and it would be a hardship to him to require him to pay the costs of the contest.''

It is difficult to find any duty requiring respondent to contest his aunt's will. Whether his failure to do so might have been construed as showing ''that he was not worthy to receive his aunt's bounty'' has no bearing on the question of costs. Paragraph ''Fifth'' of the will expressed the views of the testatrix on the subject of worthiness, and she was the person most concerned.

As already noted, if respondent had succeeded in breaking the 1948 will he would have received the whole estate under the 1944 will or at least as sole heir at law. We see no question of good faith involved. Respondent had a perfect legal right to contest the will but whether he was motivated by a high sense of duty or merely self-interest, is wholly immaterial. The fact remains that his action necessitated resistance and defense by the estate, which involved legal fees and expenses, delay, and everything else that goes with litigation. We fail to see any difference between this and any other will

contest, or how "it would be a hardship to him to require him to pay the costs of the contest."

We are satisfied that there was a clear abuse of discretion and that the ends of justice by no means required the action which was taken by the court.

### 4. *Appellant's Costs in the Trial Court*

For the reasons given under heading 3, the assessment of appellant's trial costs against the estate instead of the unsuccessful contestant was likewise a clear abuse of discretion. The final judgment established the 1948 document as decedent's last will and testament after a legal battle carried through two courts and extending well over two years. In that litigation, which respondent started, the proponent won and the contestant lost, and there was no reason whatever to assess these costs *against the winning side* instead of the losing side.

Appellant in her opening brief cites several cases dealing with the subject in general (*Estate of Yoell*, 160 Cal. 741 [117 P. 1047] ; *Estate of Marcus*, 14 Cal.App.2d 254 [58 P.2d 385] ; *Estate of Schwartz*, 87 Cal.App.2d 569 [197 P.2d 223], and *Estate of Selb*, 93 Cal.App.2d 788 [210 P.2d 45] ). Respondent, instead of attempting to answer them, devotes most of his brief to a repetition of the facts which were before the court on the contest.

The order appealed from is reversed with the direction to the superior court to enter an appropriate order or orders that appellant shall recover from respondent Potter her costs on appeal of $438.92 and her costs in the trial court of $46.50, and annulling its order assessing against the estate respondent's costs on appeal of $184.60 and costs on the trial of $169. Appellant is to recover from respondent her costs on this appeal.

Nourse, P. J., and Dooling, J., concurred.